XUE & ASSOCIATES, P.C.
Benjamin B. Xue, Esq.
Michael S. Romero, Esq.
1 School Street, Suite 303A
Glen Cove, NY 11542
Phone: (516) 595-8887
Fax:     (212) 219-2276
*Attorneys for Plaintiffs, proposed*
*FLSA Collective and potential Rule 23*
*Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

LUDOVIC FREBET, DJIBRILL SANGARE, KAIRY DEAN, WILLIAM WANDJI, MIKE NDOBA a/k/a MIKE AIMEE, and GREGORY ROUSSI *on their own behalf and on behalf of others similarly situated,*

                             Plaintiffs,

    -against-

L'ATRE ENTERPRISES, INC., 1590 FIRST AVENUE, LLC, MAISON HARLEM, LLC, HARLEM SAM, INC., ROMAIN BONNANS, SEBASTIAN ROZEC, and AYOUB SABDALAH,

                        Defendants.

-----------------------------------------------------------------X

Case No.:

**29 U.S.C. § 216(b) COLLECTIVE ACTION & FED. R. CIV. P. 23 CLASS ACTION**

**COMPLAINT**

Plaintiffs Ludovic Frebet ("Frebet"),  Djibrill Sangare ("Sangare"), Kairy Dean ("Dean") William Wandji ("Wandji"), Mike Ndoba ("Ndoba"), and Gregory Roussi ("Roussi") (collectively "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their attorneys, Xue & Associates, P.C., hereby bring this complaint against L'Atre Enterprises, Inc., 1590 First Avenue, LLC., Maison Harlem, LLC, Harlem Sam, Inc., Romain Bonnans ("Bonnans"), Sebastian Rozec ("Rozec"), and Ayoub Sabdalah ("Sabdalah")(collectively "Defendants"), and allege as follows:

# INTRODUCTION

1.   This action is brought by Plaintiffs Frebet, Sangare, Dean, Wandji, Ndoba, and Roussi, on behalf of themselves as well as other employees similarly situated, against Defendants for alleged violations of the Fair Labor Standards Act, (FLSA) 29 U.S.C. §201 *et, seq.* and New York Labor Law (NYLL), arising from Defendants' various willfully and unlawful employment policies, patterns and practices.

2.   Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in the pattern and practice of failing to pay their employees, including Plaintiffs, minimum wage for each hour worked and overtime compensation for all hours worked over forty (40) each workweek.

3.   Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage and unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgement interest; and/or (4) attorney's fees and costs.

4.   Plaintiffs further allege pursuant to NYLL § 650 et seq. and 12 New York Codes, Rules and Regulations § 146 (NYCRR) that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation and unpaid overtime compensation, (2) unpaid spread-of-hours premium, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net

wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL § 190 et seq., § 650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

5.   This Court has original federal question jurisdiction over this controversy under 29 U.S.C.§ 216(b) and 28 U.S.C. § 1331 and has supplemental jurisdiction over the NYLL claims pursuant to 28 U.S.C. § 1367(a).

6.   Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.  From on or about May 1, 2012 to on or about August 31, 2016, Plaintiff Frebet was employed by Defendants as a waiter at the restaurant formerly located at 1590 1st Avenue, New York, NY 10028, known as Le Bistro D'A Cote (the "Bistro").

8.  From on or about March 4, 2013 to August 11, 2013, Plaintiff Frebet was employed by Defendants to work as waiter at the restaurant located at 314 Bleecker Street, New York, NY 10014 (the "Restaurant"). From on or about October 1, 2016 to on or about November 19, 2016, Plaintiff Frebet was employed by Defendants as a waiter at the Restaurant. From on or about January 2, 2017 to Present, Plaintiff Frebet was employed by Defendants to work as a waiter at

the Restaurant.

9. From on or about August 1, 2014 to on or about November 1, 2016, Plaintiff Sangare was employed by Defendants to work as a busboy at the Restaurant. From on or about November 2, 2016 to on or about March 17, 2018 Plaintiff Sangare was employed by Defendants to work as a waiter at the Restaurant. From on or about January 22, 2019 to Present, Plaintiff Sangare was employed by Defendants to work as a waiter at the Restaurant.

10. From on or about April 25, 2018 to present, Plaintiff Dean was employed by Defendants to work as a waiter at the Restaurant.

11. From on or about March 2018 to November 24, 2019, Plaintiff Wandji was employed by Defendants to work as busboy at the Restaurant.

12. From on or about April 1, 2014 to on or about May 14, 2014, Plaintiff Ndoba, was employed by Defendants to work as busboy at the Restaurant. From on or about September 1, 2014 to on or about April 1, 2017, Plaintiff Ndoba was employed by Defendants to work as a dishwasher at the Restaurant. From on or about July 1, 2017 to present, Plaintiff Ndoba was employed by Defendants to work as a busboy at the Restaurant.

13. From on or about September 1, 2015 to Present, Plaintiff Roussi was employed by Defendants to work as bartender at the Restaurant.


## **DEFENDANTS**

### **Corporate Defendants**

14. Upon information and belief, Defendant L'atre Enterprises, Inc. is a domestic business corporation organized under the laws of the State of New York with a principal address at 96 Grove Street, New York, NY 10014.

15.   Upon information and belief, Defendant L'atre Enterprises, Inc. is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

16.   Upon information and belief, Defendant L'atre Enterprises, Inc. purchased, and handled goods moved in interstate commerce.

17.   Upon information and belief, Defendant 1590 First Avenue LLC. is a domestic limited liability company organized under the laws of the State of New York with a principal address at 1590 First Avenue, New York, NY 10028.

18.   Upon information and belief, Defendant 1590 First Avenue LLC. is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

19.   Upon information and belief, Defendant 1590 First Avenue LLC. purchased, and handled goods moved in interstate commerce.

20.   Upon information and belief, Defendant Maison Harlem, LLC is a domestic limited liability company organized under the laws of the State of New York with a principal address at 300 West 35th Street, 10E, New York, New York 10030.

21.   Upon information and belief, Defendant Maison Harlem, LLC. is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

22.   Upon information and belief, Defendant Maison Harlem, LLC. purchased, and handled goods moved in interstate commerce.

23.   Upon information and belief, Defendant Harlem Sam, Inc. is a domestic business corporation organized under the laws of the State of New York with a principal address at 2610

Frederick Douglas Blvd, New York, NY 10030.

24.  Upon information and belief, Defendant Harlem Sam, Inc. is a business engaged in interstate commerce that has gross sales in excess of five hundred thousand dollars ($500,000.00) per year.

25.  Upon information and belief, Defendant Harlem Sam, Inc. purchased, and handled goods moved in interstate commerce.

**Owner/Operator Defendants**

26.   Defendant Bonnans is an officer, director, manager and/or majority shareholder or owner of the Corporate Defendants and being amongst the ten largest shareholders and/or LLC members, is individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

27.   Defendant Bonnans is a part-owner of, liquor license principal for, and an active, day-to-day manager of Corporate Defendants and (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at the Restaurant.

28.   Defendant Bonnans acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Defendant L'atre Enterprises, Inc.

29.   Defendant Bonnans is an employer of Plaintiffs within the meaning of the FLSA and NYLL.

30.    Defendant Rozec is an officer, director, manager and/or majority shareholder or owner of Corporate Defendant L'atre Enterprises, Inc. and being amongst the ten largest shareholders and/or LLC members, is individually responsible for unpaid wages under the New York Business Corporation Law and Limited Liability Company Law. NYBSC § 630(a), NYLLC § 609(c).

31.    Defendant Rozec is a part-owner of, and an active, day-to-day manager at the Restaurant and (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at the Restaurant.

32.    Defendant Rozec acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Defendant L'atre Enterprises, Inc.

33.    Defendant Rozec is an employer of Plaintiffs within the meaning of the FLSA and NYLL.

34.    Defendant Sabdalah is an active, day-to-day manager at the Restaurant and (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at the Restaurant.

35.    Defendant Sabdalah acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with Defendant L'atre Enterprises, Inc.

36.    Defendant Sabdalah is an employer of Plaintiffs within the meaning of the FLSA and NYLL.

## STATEMENT OF FACTS

### Defendants Constitute an Enterprise

37.   Upon information and belief, Corporate Defendants L'atre Enterprises, Inc., 1590 First Avenue LLC., Maison Harlem, LLC, and Harlem Sam, Inc. are joint employers of Plaintiffs and constitute an enterprise as the term is defined by 29 USC 203(r) insofar as they share staff, pay Plaintiffs as the shareholders of the enterprise, advertise the Corporate Defendants as an enterprise, and are otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co-owned by the same partners.

38.   These partners include Defendant Bonnans, who concurrently controlled more than one restaurant at any one time.

39.   For instance, at all relevant times during Plaintiffs' employment with Defendants, Romain Bonnans was in charge of both the Restaurant and the Bistro (until the Bistro closed), and subsequently was in charge of both the Restaurant (which operates under the trade name "AOC"), the restaurant owned and operated by Harlem Sam, Inc (which operates under the trade name "AOC East" (hereinafter "AOC East")), and the restaurant owned and operated by Maison Harlem, LLC (hereinafter "Maison Harlem").

40.   At all times relevant herein, Defendants L'atre Enterprises, Inc, 1590 First Avenue LLC., Maison Harlem, LLC, and Harlem Sam, Inc. were "enterprise[s] engaged in commerce" within the meaning of FLSA.

41.   At all relevant times, the work performed by Plaintiffs was directly essential

to the business operated by Defendants L'atre Enterprises, Inc, 1590 First Avenue LLC.,

Maison Harlem, LLC and Harlem Sam, Inc.

42.  In fact, from time to time, Plaintiffs were dispatched to work upon demand

moving and delivering inventory and machinery between the Restaurant, the Bistro,

Maison Harlem, and AOC East based upon the needs of the Defendants.


## Wage and Hour Claims

43. There are approximately 20 persons working at the Restaurant at any one time,

including approximately: 7 waiters, 5 busboys, 5 chefs, and 3 bartenders.

44. Defendants committed the following alleged acts knowingly, intentionally and

willfully against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

45. Pursuant to NYCRR Part 146-2.2 and 29 USC § 203(m), an employer cannot take

credit towards the basic minimum wage if a service employee or food service worker has not

received notification of the tip credit.

46. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs and

similarly situated employees at least the New York minimum wage for each hour worked.

47. Servers, busboys, and bartenders at the Restaurant, including Plaintiffs Frebet,

Sangare, Dean, Wandji, Ndoba, and Roussi were not paid at least the New York minimum wage

for each hour worked, even if their tips did not exceed the Federal and New York minimum

wages.

48. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their

lawful overtime compensation of one and one-half times (1.5x) their regular rate of pay for all

hours worked over forty (40) in a given workweek.

49. Upon information and belief, at all relevant times Defendants improperly withheld portions of Plaintiffs' wages, fraudulently stating that the deductions were made for the purposes of tax withholdings, when in reality, Defendants illegally kept these deductions for themselves.

50. While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

51. Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

52. Upon information and belief, Defendants failed to keep full and accurate records in order to mitigate liability for their wage violations. Defendants never furnished any notice of their use of tip credit.

53. At all relevant times, Defendants knowingly and willfully failed to provide Plaintiffs and similarly situated employees with Time of Hire Notice reflecting true rates of pay and payday as well as paystubs that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

54. Defendants knew that the nonpayment of overtime pay and New York's "spread of hours" premium for every day in which Plaintiffs worked over ten (10) hours would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

55. Defendants did not post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, tip credit, and pay day.


**Plaintiff Ludovic Frebet**

56. From on or about May 1, 2012 to on or about January 1, 2014 Plaintiff Frebet was

employed by Defendants to work as a waiter at the Bistro.

57.  From on or about March 4, 2013 to August 11, 2013, Plaintiff Frebet was employed by Defendants to work as waiter at the Restaurant.

58.  From on or about October 1, 2016 to on or about November 19, 2016, Plaintiff Frebet was employed by Defendants as a waiter at the Restaurant.

59.  From on or about January 2, 2017 to Present, Plaintiff Frebet was employed by Defendants to work as a waiter at the Restaurant.

60.  During the entirety of Plaintiff Frebet's employment, Defendants did not notify Plaintiff Frebet that they were taking a tip credit against his wages.

61.  During the entirety of Plaintiff Frebet's employment, Defendants unlawfully retained 10% of the tip pool rightfully belonging to Plaintiff Frebet.

62.  From on or about May 1, 2012 to on or about December 31, 2012, Plaintiff Frebet would work as a waiter at the Bistro, and on average he worked twenty-four (24) hours per week at the Bistro.

63.  From on or about May 1, 2012 to on or about December 11, 2013, Plaintiff Frebet's regular work schedule at the Bistro ran as follows: on Fridays, Saturdays and Sundays from 4:00PM to midnight he would work as a waiter without any rest breaks or meal breaks. On average he worked twenty-four (24) hours per week at the Bistro.

64.  From on or about March 4, 2013 to on or about August 11, 2013, Plaintiff Frebet would work as a waiter at the Restaurant, and on average he worked sixteen (16) hours per week.

65.  From on or about March 4, 2013 to on or about August 11, 2013, Plaintiff Frebet's regular work schedule at the Restaurant ran as follows: on Wednesdays and Thursdays from 4:00PM to 10:00PM he would work as a waiter without any rest breaks or meal breaks. On

average he worked twelve (12) hours per week at the Restaurant.

66.   From on or about January 1, 2013 to on or about December 31, 2013, Plaintiff Frebet would work as a waiter at the Bistro, and on average he worked twenty-four (24) hours per week at the Bistro.

67.   From on or about January 1, 2013 to on or about December 31, 2013, Plaintiff Frebet's regular work schedule at the Bistro ran as follows: on Fridays, Saturdays and Sundays from 4:00PM to midnight he would work as a waiter without any rest breaks or meal breaks. On average he worked twenty-four (24) hours per week at the Bistro.

68.   From on or about October 1, 2016 to on or about November 19, 2016, Plaintiff Frebet would work as a waiter at the Restaurant, and on average he worked thirty-two (32) hours per week.

69.   From on or about October 1, 2016 to on or about November 19, 2016, Plaintiff Frebet's regular work schedule at the Restaurant ran as follows: on Wednesdays from 7:30AM to 4:00PM he would work as a waiter without any rest or meal breaks, and on Thursdays, Fridays, and Saturdays from 4:00PM to midnight he would work as a waiter without any rest breaks or meal breaks. On average he worked thirty-two (32) hours per week at the Restaurant but would frequently work an extra shift as a waiter on Fridays, from 7:30AM to 4:00PM which would make his shift on Fridays run from 7:30AM to midnight.

70.   From on or about January 2, 2017 to Present, Plaintiff Frebet would work as a waiter at the Restaurant, and on average he worked thirty-two (32) hours per week.

71.   From on or about January 2, 2017 to Present, Plaintiff Frebet's regular work schedule at the Restaurant ran as follows: on Wednesdays from 7:30AM to 4:00PM he would work as a waiter without any rest or meal breaks, and on Thursdays, Fridays, and Saturdays from 4:00PM

to midnight he would work as a waiter without any rest breaks or meal breaks. On average he worked thirty-two (32) hours per week at the Restaurant but would frequently work an extra shift as a waiter on Fridays, from 7:30AM to 4:00PM, which would make his shift on Fridays run from 7:30AM to midnight

72. At all relevant times, Plaintiff Frebet did not have a fixed time for his meals.

73. In 2013, Plaintiff Frebet was paid an hourly rate of $5.00 per hour.

74. In 2014, Plaintiff Frebet was paid an hourly rate of $5.00 per hour.

75. In 2015, Plaintiff Frebet was paid an hourly rate of $5.00 per hour.

76. In 2016, Plaintiff Frebet was paid an hourly rate of $7.50 per hour.

77. In 2017, Plaintiff Frebet was paid an hourly rate of $7.50 per hour.

78. In 2018, Plaintiff Frebet was paid an hourly rate of $8.35 per hour.

79. In 2019, Plaintiff Frebet was paid an hourly rate of $10.00 per hour.

80. At all relevant times, Plaintiff Frebet was not paid overtime pay for overtime work.

81. Throughout his employment, Plaintiff Frebet was not compensated at least at one- and-one-half times his promised hourly wage for all hours worked above forty (40) in each workweek.

82. Throughout his employment, Plaintiff Frebet was not given a statement with each payment of wages reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in French, Plaintiff Frebet's native language.

83. Throughout his employment, Plaintiff Frebet was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

84. Throughout his employment, Defendants would regularly fail to promptly pay

Plaintiff Frebet any wages owed, and on many occasions, checks issued by the Restaurant to Plaintiff Frebet for wages would bounce.

**Plaintiff Sangare**

85.    From on or about August 1, 2014 to on or about November 1, 2016, Plaintiff Sangare was employed by Defendants to work as a busboy at the Restaurant.

86.    From on or about November 2, 2016 to on or about March 17, 2018 Plaintiff Sangare was employed by Defendants to work as a waiter at the Restaurant

87.    From on or about January 22, 2019 to Present, Plaintiff Sangare was employed by Defendants to work as a waiter at the Restaurant.

88.    During the entirety of Plaintiff Sangare's employment, Defendants did not notify Plaintiff Sangare that it was taking a tip credit against his wages.

89.    During the entirety of Plaintiff Sangare's employment, Defendants unlawfully retained 10% of the tip pool rightfully belonging to him.

90.    From on or about August 1, 2014 to on or about November 1, 2016, Plaintiff Sangare would work as a busboy, and on average he worked Fifty-Seven and a half (57.5) hours per week.

91.    From on or about August 1, 2014 to on or about November 1, 2016, Plaintiff Sangare's regular work schedule ran as follows: on Mondays and Tuesdays from 7:30AM to 4:00PM he would work as a busboy without any rest breaks and one meal break, on Wednesdays, Thursdays, and Fridays from 4:00PM to midnight he would work as a busboy without any rest breaks or meal breaks, and on Saturdays from 7:30AM to midnight he would work as a busboy without any rest breaks and one meal break. On average he worked Fifty-Seven and a half (57.5)

hours per week.

92.     From on or about November 2, 2016 to on or about December 31, 2018, Plaintiff Sangare would work as a waiter, and on average he worked Thirty-Six (36) hours per week.

93.     From on or about November 2, 2016 to on or about December 31, 2018, Plaintiff Sangare's regular work schedule ran as follows: on Tuesdays from 4:00PM to 10:00PM he would work as a waiter without any rest breaks or meal breaks, on Wednesdays and Fridays from 4:00PM to midnight he would work as a waiter without any rest breaks or meal breaks, and on Saturdays from 10:00AM to midnight he would work as a waiter without any rest breaks and one meal break. On average he worked Thirty-Six (36) hours per week.

94.     From on or about January 1, 2018 to on or about March 17, 2018, Plaintiff Sangare would work as a waiter, and on average he worked Twenty-Eight (28) hours per week.

95.     From on or about January 1, 2018 to on or about March 17, 2018, Plaintiff Sangare's regular work schedule ran as follows: on Wednesdays from 6:00PM to midnight he would work as a waiter without any rest breaks or meal breaks, on Thursdays from 4:00PM to 10:00PM he would work as a waiter without any rest breaks or meal breaks, and on Fridays and Saturdays from 4:00PM to midnight he would work as a waiter without any rest breaks or meal breaks. On average he worked Twenty-Eight (28) hours per week.

96.     From on or about January 22, 2019 to on or about September 30, 2019, Plaintiff Sangare would work as a waiter, and on average he worked Sixteen (16) hours per week.

97.     From on or about January 22, 2019 to on or about September 30, 2019, Plaintiff Sangare's regular work schedule ran as follows: on Tuesdays and Wednesdays from 4:00PM to midnight he would work as a waiter without any rest breaks or meal breaks. On average he worked Sixteen (16) hours per week.

98.    From on or about October 1, 2019 to Present, Plaintiff Sangare would work as a waiter, and on average he worked eleven (11) hours per week.

99.    From on or about October 1, 2019 to Present, Plaintiff Sangare's regular work schedule ran as follows: on Tuesdays from 6:00PM to 11:00PM he would work as a waiter without any rest breaks or meal breaks, and on Wednesdays from 5:00PM to midnight he would work as a waiter without any rest breaks or meal breaks. On average he worked eleven (11) hours per week.

100.    At all relevant times, Plaintiff Sangare did not have a fixed time for his meals.

101.    Plaintiff Sangare did not have a set amount of time eat his meals and was strongly encouraged by Defendants to eat and get back to work as quickly as possible.

102.    In 2014, Plaintiff Sangare was paid an hourly rate of $5.00 per hour.

103.    In 2015, Plaintiff Sangare was paid an hourly rate of $5.00 per hour.

104.    In 2016, Plaintiff Sangare was paid an hourly rate of $7.50 per hour.

105.    In 2017, Plaintiff Sangare was paid an hourly rate of $7.50 per hour.

106.    In 2018, Plaintiff Sangare was paid an hourly rate of $8.50 per hour.

107.    In 2019, Plaintiff Sangare was paid an hourly rate of $10.00 per hour.

108.    At all relevant times, Plaintiff Sangare was not paid overtime pay for overtime work.

109.    From on or about August 1, 2014 to on or about November 1, 2016, Plaintiff Sangare spent at least two hours or 20 percent of his shifts working in tasks unrelated to food service, such as delivering meals, cleaning the bathrooms, cleaning work areas, and tending to the garden located at the Restaurant.

110.    Throughout his employment, Plaintiff Sangare was not compensated at least at one-

and-one-half times his promised hourly wage for all hours worked above forty (40) in each workweek.

111.    Throughout his employment, Plaintiff Sangare was not given a statement with each payment of wages reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in French, Plaintiff Sangare's native language.

112.    Throughout his employment, Plaintiff Sangare was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

113.    Throughout his employment, Defendants would regularly fail to promptly pay Plaintiff Sangare any wages owed, and on many occasions, checks written by Defendants to Plaintiff Sangare for wages would bounce.

**Plaintiff Dean**

114. From on or about April 25, 2018 to Present Plaintiff Dean was employed by Defendants to work as a waiter at the Restaurant

115. During the entirety of Plaintiff Dean's employment, Defendants did not notify Plaintiff Dean that it was taking a tip credit against his wages.

116. During the entirety of Plaintiff Dean's employment, Defendants unlawfully retained 10% of the tip pool rightfully belonging to him.

117. From on or about April 25, 2018 to on or about June 25, 2018, Plaintiff Dean would work as a waiter, and on average he worked thirty-three (33) hours per week.

118. From on or about April 25, 2018 to on or about June 25, 2018, Plaintiff Dean's regular work schedule ran as follows: on Mondays and Tuesdays from 4:00PM to midnight he would work as a waiter without any rest breaks or meal breaks, on Thursdays from 12:00 PM to 4:00PM he would work as a waiter without any rest breaks or meal breaks, and on Sundays from 11:00 AM to midnight he would work as a waiter without any rest breaks and one meal break. On average he worked thirty-three (33) hours per week.

119. From on or about June 26, 2018 to on or about August 1, 2018, Plaintiff Dean would work as a waiter, and on average he worked thirty-three (33) hours per week.

120. From on or about June 26, 2018 to on or about August 1, 2018, Plaintiff Dean's regular work schedule ran as follows: on Mondays and Tuesdays from 4:00PM to midnight he would work as a waiter without any rest breaks or meal breaks, on Thursdays from 12:00 PM to 4:00PM he would work as a waiter without any rest breaks or meal breaks, and on Saturdays from 11:00 AM to midnight he would work as a waiter without any rest breaks and one meal break. On average he worked thirty-three (33) hours per week.

121. From on or about August 2, 2018 to on or about November 1, 2018, Plaintiff Dean would work as a waiter, and on average he worked forty-five (45) hours per week.

122. From on or about August 2, 2018 to on or about November 1, 2018, Plaintiff Dean's regular work schedule ran as follows: on Mondays, Tuesdays, Thursdays, and Fridays from 4:00PM to midnight he would work as a waiter without any rest breaks or meal breaks, and on Saturdays from 11:00 AM to midnight he would work as a waiter without any rest breaks and one meal break. On average he worked forty-five (45) hours per week.

123. From on or about November 2, 2018 to on or about August 28, 2019, Plaintiff Dean would work as a waiter, and on average he worked thirty-three (33) hours per week.

124. From on or about November 2, 2018 to on or about August 28, 2019, Plaintiff Dean's regular work schedule ran as follows: on Mondays and Tuesdays from 4:00PM to midnight he would work as a waiter without any rest breaks or meal breaks, on Thursdays from 12:00 PM to 4:00PM he would work as a waiter without any rest breaks or meal breaks, and on Sundays from 11:00 AM to midnight he would work as a waiter without any rest breaks and one meal break. On average he worked thirty-three (33) hours per week.

125. From on or about October 13, 2019 to present, Plaintiff Dean would work as a waiter, and on average he worked seventeen (17) hours per week.

126. From on or about October 13, 2019 to present, Plaintiff Dean's regular work schedule ran as follows: on Mondays from 6:00PM to 11:00PM he would work as a waiter without any rest breaks or meal breaks, and on Sundays from 11:00AM to 11:00PM he would work as a waiter without any rest breaks and meal break. On average he worked seventeen (17) hours per week.

127. At all relevant times, Plaintiff Dean did not have a fixed time for his meals.

128. Plaintiff Dean did not have a set amount of time eat his meals and was strongly encouraged by Defendants to eat and get back to work as quickly as possible.

129. In 2018, Plaintiff Dean was paid an hourly rate of $8.65 per hour.

130. In 2019, Plaintiff Dean was paid an hourly rate of $10.00 per hour.

131. At all relevant times, Plaintiff Dean was not paid overtime pay for overtime work.

132. Throughout his employment, Plaintiff Dean was not compensated at least at one- and-one-half times his promised hourly wage for all hours worked above forty (40) in each workweek.

133. Throughout his employment, Plaintiff Dean was not given a statement with each payment of wages reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages,

any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in French, Plaintiff Dean's native language.

134. Throughout his employment, Plaintiff Dean was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

135. Throughout his employment, Defendants would regularly fail to promptly pay Plaintiff Dean any wages owed, and on many occasions, checks written by Defendants to Plaintiff Dean for wages would bounce.

**Plaintiff Wandji**

136. From on or about March 12, 2018 to November 24, 2019, Plaintiff Wandji was employed by Defendants to work as a busboy at the Restaurant.

137. During the entirety of Plaintiff Wandji's employment, Defendants did not notify Plaintiff Wandji that it was taking a tip credit against his wages.

138. During the entirety of Plaintiff Wandji's employment, Defendants unlawfully retained 10% of the tip pool rightfully belonging to him.

139. From on or about March 12, 2018 to April 1, 2018, Plaintiff Wandji would work as a busboy, and on average he worked eight (8) hours per week.

140. From on or about March 12, 2018 to April 1, 2018, Plaintiff Wandji's regular work schedule ran as follows: on Saturdays from 4:00 PM to midnight he would work as a busboy without any rest breaks and no meal breaks. On average he worked eight 8 hours per week.

141. From on or about April 2, 2018 to September 1, 2018, Plaintiff Wandji would work as a busboy, and on average he worked thirty-two (32) hours per week.

142. From on or about April 2, 2018 to September 1, 2018, Plaintiff Wandji's regular work schedule ran as follows: on Mondays and Thursdays from 8:00AM to 4:00PM he would

work as a busboy with one meal break, on Saturdays from 12:00PM to midnight he would work as a busboy with one meal break, and on Sundays from 12:00PM to 4:00PM he would work as a busboy with one meal break. He would occasionally work on Tuesdays from 8:AM to 4:00PM as a busboy with one meal break. On average he worked thirty-two (32) hours per week.

143.    From on or about September 2, 2018 to January 31, 2019, Plaintiff Wandji would work as a busboy, and on average he worked fourteen (14) hours per week.

144.    From on or about September 2, 2018 to January 31, 2019, Plaintiff Wandji's regular work schedule ran as follows: on Sundays from 10:00AM to midnight he would work as a busboy with one meal break. On average he worked fourteen (14) hours per week.

145.    From on or about February 1, 2019 to September 30, 2019, Plaintiff Wandji would work as a busboy, and on average he worked thirty-three (33) hours per week.

146.    From on or about February 1, 2019 to September 30, 2019, Plaintiff Wandji's regular work schedule ran as follows: on Fridays and Saturdays from 6:00PM to midnight he would work as a busboy without any rest breaks or meal breaks, on Sundays from 11:00AM to midnight he would work as a busboy with one meal break, and on Mondays from 4:00PM to midnight he would work as a busboy without any rest breaks or meal breaks. On average he worked thirty-three (33) hours per week.

147.    From on or about October 1, 2019 to November 24, 2019, Plaintiff Wandji would work as a busboy, and on average he worked twenty-five (25) hours per week.

148.    From on or about October 1, 2019 to Present, Plaintiff Wandji's regular work schedule ran as follows: on Fridays and Saturdays from 6:00PM to midnight he would work as a busboy without any rest breaks or meal breaks, and on Sundays from 11:00AM to midnight he would work as a busboy with one meal break. On average he worked twenty-five (25) hours per

week.

149.    From time to time throughout his employment, Defendants required Plaintiff Wandji to engage in "heavy cleaning" of the Restaurant. This "heavy cleaning" would take up to 8 hours, and during this time, Plaintiff Wandji was not compensated by Defendants at all.

150.    At all relevant times, Plaintiff Wandji did not have a fixed time for his meals.

151.    Plaintiff Wandji did not have a set amount of time eat his meals and was strongly encouraged by Defendants to eat and get back to work as quickly as possible.

152.    In 2018, Plaintiff Wandji was paid an hourly rate of $8.35 per hour.

153.    In 2019, Plaintiff Wandji was paid an hourly rate of $10.00 per hour.

154.    At all relevant times, Plaintiff Wandji was not paid overtime pay for overtime work.

155.    Throughout his employment, Plaintiff Wandji spent at least two hours or 20 percent of his shifts working in tasks unrelated to food service, such as delivering meals, cleaning the bathrooms, and cleaning work areas.

156.    Throughout his employment, Plaintiff Wandji was not compensated at least at one-and-one-half times his promised hourly wage for all hours worked above forty (40) in each workweek.

157.    Throughout his employment, Plaintiff Wandji was not given a statement with each payment of wages reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in French, Plaintiff Wandji's native language.

158.    Throughout his employment, Plaintiff Wandji was not compensated for New

York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

159.    Throughout his employment, Defendants would regularly fail to promptly pay Plaintiff Wandji any wages owed, and on many occasions, checks written by Defendants to Plaintiff Wandji for wages would bounce.

**Plaintiff Ndoba**

160.    From on or about April 1, 2014 to May 14, 2014, Plaintiff Ndoba was employed by Defendants to work as a busboy at the Restaurant.

161.    From on or about September 1, 2014 to April 1, 2017, Plaintiff Ndoba was employed by Defendants to work as a dishwasher at the Restaurant.

162.    From on or about July 1, 2017 to Present, Plaintiff Ndoba was employed by Defendants to work as a busboy at the Restaurant.

163.    During the entirety of Plaintiff Ndoba's employment, Defendants did not notify Plaintiff Ndoba that it was taking a tip credit against his wages.

164.    During the entirety of Plaintiff Ndoba's employment, Defendants unlawfully retained 10% of the tip pool rightfully belonging to him.

165.    From on or about April 1, 2014 to on or about May 14, 2014, Plaintiff Ndoba would work as a busboy, and on average he worked Twenty-Eight (28) hours per week.

166.    From on or about April 1, 2014 to on or about May 14, 2014, Plaintiff Ndoba's regular work schedule ran as follows: on Mondays, Wednesdays, Thursdays, and Fridays from 5:00PM to midnight he would work as a busboy without any rest breaks or meal breaks. On average he worked Twenty-Eight (28) hours per week.

167.    From on or about September 1, 2014 to on or about April 1, 2017, Plaintiff Ndoba would work as a dishwasher, and on average he worked Forty-Eight (48) hours per week.

168.    From on or about September 1, 2014 to on or about April 1, 2017, Plaintiff Ndoba's regular work schedule ran as follows: on Tuesdays through Sundays from 4:00PM to midnight he would work as a dishwasher without any rest breaks or meal breaks. On average he worked Forty-Eight (48) hours per week.

169.    From on or about July 1, 2017 to on or about November 1, 2017, Plaintiff Ndoba would work as a busboy, and on average he worked Forty-Eight (48) hours per week.

170.    From on or about July 1, 2017 to on or about November 1, 2017, Plaintiff Ndoba's regular work schedule ran as follows: on Tuesdays through Thursdays from 4:00PM to midnight he would work as a busboy without any rest breaks or meal breaks, and on Fridays and Saturdays from 10:00AM to midnight he would work as a busboy with one meal break. On average he worked Fifty-Two (52) hours per week.

171.    From on or about November 2, 2017 to on or about May 1, 2018, Plaintiff Ndoba would work as a busboy, and on average he worked Forty-Four (44) hours per week.

172.    From on or about November 2, 2017 to on or about May 1, 2018, Plaintiff Ndoba's regular work schedule ran as follows: on Tuesdays through Fridays from 4:00PM to midnight he would work as a busboy without any rest breaks or meal breaks, and on Saturdays from 10:00AM to midnight he would work as a busboy with one meal break. On average he worked Forty-Four (44) hours per week.

173.    From on or about May 2, 2018 to on or about June 15, 2018, Plaintiff Ndoba would work as a busboy, and on average he worked Forty-Six and a half (46.5) hours per week.

174.    From on or about May 2, 2018 to on or about June 15, 2018, Plaintiff Ndoba's

regular work schedule ran as follows: on Tuesdays through Thursdays from 4:00PM to midnight he would work as a busboy without any rest breaks or meal breaks, on Saturdays from 10:00AM to midnight he would work as a busboy with one meal break and on Sundays from 7:30AM to 4:00PM he would work as a busboy with one meal break. On average he worked Forty-Six and a half (46.5) hours per week.

175.    From on or about June 16, 2018 to on or about September 1, 2019, Plaintiff Ndoba would work as a busboy, and on average he worked Forty-Six (46) hours per week.

176.    From on or about June 16, 2018 to on or about September 1, 2019, Plaintiff Ndoba's regular work schedule ran as follows: on Tuesdays through Thursdays from 4:00PM to midnight he would work as a busboy without any rest breaks or meal breaks, on Saturdays from 10:00AM to midnight he would work as a busboy with one meal break and on Sundays from 8:00AM to 4:00PM he would work as a busboy with one meal break. On average he worked Forty-Six (46) hours per week.

177.    From on or about September 2, 2018 to Present, Plaintiff Ndoba would work as a busboy, and on average he worked Thirty-Five (35) hours per week.

178.    From on or about September 2, 2018 to Present, Plaintiff Ndoba's regular work schedule ran as follows: on Tuesdays through Thursdays from 6:00PM to midnight he would work as a busboy without any rest breaks or meal breaks, on Saturdays from 12:00PM to midnight he would work as a busboy with one meal break and on Sundays from 9:00AM to 5:00PM he would work as a busboy with one meal break. On average he worked Thirty-Five (35) hours per week.

179.    From time to time throughout his employment, Defendants required Plaintiff Ndoba to engage in "heavy cleaning" of the Restaurant. This "heavy cleaning" would take up to 8 hours, and during this time, Plaintiff Ndoba was not compensated by Defendants at all.

180.    At all relevant times, Plaintiff Ndoba did not have a fixed time for his meals.

181.    Plaintiff Ndoba did not have a set amount of time eat his meals and was strongly encouraged by Defendants to eat and get back to work as quickly as possible.

182.    In 2014, during the time he was employed as a busboy Plaintiff Ndoba was paid an hourly rate of $5.00 per hour.

183.    From 2014 to 2017, during the time he was employed as a dishwasher Plaintiff Ndoba was paid an hourly rate of $7.00 per hour.

184.    In 2017, during the time he was employed as a busboy, Plaintiff Ndoba was paid an hourly rate of $7.50 per hour.

185.    In 2018, Plaintiff Ndoba was paid an hourly rate of $8.00 per hour.

186.    In 2019, Plaintiff Ndoba was paid an hourly rate of $8.00 per hour.

187.    At all relevant times, Plaintiff Ndoba was not paid overtime pay for overtime work.

188.    Throughout his employment, Plaintiff Ndoba spent at least two hours or 20 percent of his shifts working in tasks unrelated to food service, such as delivering meals, cleaning the bathrooms, and cleaning work areas.

189.    Throughout his employment, Plaintiff Ndoba was not compensated at least at one-and-one-half times his promised hourly wage for all hours worked above forty (40) in each workweek.

190.    Throughout his employment, Plaintiff Ndoba was not given a statement with each payment of wages reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for

each pay day in French, Plaintiff Ndoba's native language.

191.    Throughout his employment, Plaintiff Ndoba was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

192.    Throughout his employment, Defendants would regularly fail to promptly pay Plaintiff Ndoba any wages owed, and on many occasions, checks written by Defendants to Plaintiff Ndoba for wages would bounce.

**Plaintiff Roussi**

193.    From on or about September 1, 2015 to Present, Plaintiff Roussi was employed by Defendants to work as a bartender at the Restaurant.

194.    During the entirety of Plaintiff Roussi's employment, Defendants did not notify Plaintiff Roussi that it was taking a tip credit against his wages.

195.    During the entirety of Plaintiff Roussi's employment, Defendants unlawfully retained 10% of the tip pool rightfully belonging to him.

196.    From on or about September 1, 2015 to on or about January 1, 2016, Plaintiff Roussi would work as a bartender, and on average he worked fifty-two and a half (52.5) hours per week.

197.    From on or about September 1, 2015 to on or about January 1, 2016, Plaintiff Roussi's regular work schedule ran as follows. On Wednesdays and Thursdays from 4:00 PM to midnight he would work as a bartender without any rest breaks or meal breaks, on Fridays and Saturdays from 4:00 PM to 2:00 AM he would work as a bartender without any rest breaks or meal breaks, and on Sundays from 7:30 AM to midnight he would work as a bartender without any rest breaks and one meal break. On average he worked fifty-two and a half (52.5) hours per week.

198.    From on or about January 2, 2016 to on or about December 31, 2017, Plaintiff Roussi would work as a bartender, and on average he worked forty-six (46) hours per week.

199.    From on or about January 2, 2016 to on or about December 31, 2017, Plaintiff Roussi's regular work schedule ran as follows. On Wednesdays and Thursdays from 4:00 PM to midnight he would work as a bartender without any rest breaks or meal breaks, and on Fridays, Saturdays, and Sundays from 4:00 PM to 2:00 AM he would work as a bartender without any rest breaks or meal breaks. On average he worked forty-six (46) hours per week.

200.    From on or about January 1, 2018 to present, Plaintiff Roussi would work as a bartender, and on average he worked forty-six (46) hours per week.

201.    From on or about January 1, 2018 to present, Plaintiff Roussi's regular work schedule ran as follows. On Tuesdays through Saturdays from 4:00 PM to midnight he would work as a bartender without any rest breaks or meal breaks. On average he worked forty (40) hours per week.

202.    At all relevant times, Plaintiff Roussi did not have a fixed time for his meals.

203.    Plaintiff Roussi had ten (10) minutes to eat his meals, during which he was on call to work.

204.    At all relevant times, Plaintiff Roussi was not paid overtime pay for overtime work.

205.    From the beginning of his employment until in or around September 2017, Plaintiff Roussi was not paid any wages at all by Defendants and was compensated solely from tips.

206.    From in or around September 2017 until on or about December 31, 2017 Plaintiff Roussi was paid an hourly rate of $6.00 per hour.

207.    In 2018, Plaintiff Roussi was paid an hourly rate of $8.00 per hour.

208.    In 2019, Plaintiff Ndoba was paid an hourly rate of $9.00 per hour.

209.    Throughout his employment, Plaintiff Roussi was not compensated at least at one-and-one-half times his promised hourly wage for all hours worked above forty (40) in each workweek.

210.    Throughout his employment, Plaintiff Roussi was not given a statement with each payment of wages reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in French, Plaintiff Roussi's native language.

211.    Throughout his employment, Plaintiff Roussi was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

212.    Throughout his employment, Defendants would regularly fail to promptly pay Plaintiff Roussi any wages owed, and on many occasions, checks written by Defendants to Plaintiff Roussi for wages would bounce.

## COLLECTIVE ACTION ALLEGATIONS

213.    Plaintiffs bring this action individually and as class representatives on behalf of all other and former non-exempt employees who have been or were employed by Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and who were not compensated at the minimum hourly rate for all hours worked and at one and one half times their promised work for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

214.     Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

215.     All said persons, including Plaintiffs, are referred to herein as the "Class."

216.     The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Fed. R. Civ. P. 23.

**Numerosity**

217.     The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

**Commonality**

218.     There are questions of law and fact common to the Class which predominate

over any questions affecting only individual class members, including:

        a.        Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

        b.        Whether Plaintiffs and Class members are promised and not paid at their promised hourly wage;

        c.        Whether Plaintiff and Class members are not paid at least the hourly minimum wage for each hour worked;

        d.        Whether Plaintiffs and Class members are entitled to and paid overtime at their promised hourly wage under the New York Labor Law;

        e.        Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

        f.        Whether Defendants maintained a policy, pattern and/or practice of failing to provide requisite statutory meal periods;

        g.        Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

        h.        Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

        i.        At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

**Typicality**

219.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage or overtime compensation. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefitted from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

**Adequacy**

220.    Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage-and-hour employment litigation cases.

**Superiority**

221.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage-and-hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendant. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and

without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

222.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

<u>STATEMENT OF CLAIMS</u>

## COUNT I
### [Violations of the Fair Labor Standards Act—Failure to Pay Minimum Wage/Unpaid Wages Brought on behalf of the Plaintiffs and the FLSA Collective]

223.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

224.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs, and the similarly situated collective action members, in full for some or all of the hours they worked.

225.    Furthermore, upon information and belief, at all relevant times, Defendants had a policy of improperly withholding portions of Plaintiffs' wages, fraudulently stating that the deductions were made for the purposes of tax withholdings.  In reality, Defendants kept these deductions for themselves.

226.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employees affected in the amount of their unpaid wage, and in an additional equal amount as liquidated damages.

227.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiff and Collective Action Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action Members.

## COUNT II.
### [Violation of New York Labor Law—Failure to Pay Minimum Wage/ Unpaid Wages Brought on behalf of Plaintiffs and Rule 23 Class]

228.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

229.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

230.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiffs and the Class in full for some or all of the hours they worked.

231.    Defendants knowingly and willfully violated Plaintiffs' and similarly situated Class Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.

232.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.

**[Violations of the Fair Labor Standards Act—Failure to Pay Overtime Brought on behalf of the Plaintiffs and the FLSA Collective]**

233.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

234.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum wage,

whichever is greater. 29 U.S.C. § 207(a).

235.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

236.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

237.    At all relevant times, Defendants had, and continues to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

238.    The FLSA and supporting regulations require employers to notify employees of employment law requirements. 29 C.F.R. § 516.4.

239.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate its exploitation of Plaintiffs' and FLSA Collectives' labor.

240.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by its failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.


**COUNT IV.**

**[Violations of New York Labor Law—Failure to Pay Overtime Brought on behalf of Plaintiffs and Rule 23 Class]**

241.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

242.    An employer who fails to pay overtime shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act, and interest.

243.    At all relevant times, Defendants had a policy and practice of refusing to pay overtime compensation to Plaintiffs at one and one-half times the hourly rate Plaintiffs and the class are entitled to.

244.    Defendants' failure to pay Plaintiffs their overtime pay violated the NYLL.

245.    Defendants' failure to pay Plaintiffs was not in good faith.

## COUNT V.

**[Illegal Tip Retention, NYLL §146-2.18 and NYLL §146-2.20 Brought on behalf of Plaintiffs and the Rule 23 Class]**

246.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

247.    Section 196-d of the New York Labor Law prohibits employers from demanding, accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge

purported to be a gratuity.

248.    A tip is the sole property of the tipped employee regardless of whether the employer takes a tip credit.

249.    The NYLL prohibits any arrangement between the employer and tipped employee whereby any part of the tip received becomes the property of the employer.

250.    Retaining portions of the tips from Plaintiffs to unjustly enrich the Owner/Operator Defendant or using portion of the tips to pay non-tipped employees is prohibited under the FLSA.

251.    A charge purported to be a gratuity, including charges advertised to be "delivery fee" to customers, must be distributed in full as gratuities to the service employees or food service workers who provided the service.

252.    §146-2.18 provides that there shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for "service" or "food service," is a charge purported to be a gratuity.

253.    At all relevant times, Defendants had a policy and practice of retaining ten percent (10%) of the gratuities the Plaintiffs and the class were entitled to.

254.    Defendants' retention of the gratuities to which Plaintiffs and the class were entitled was not in good faith.


**COUNT VI.**

**[Violation of New York Labor Law—Spread of Time Pay Brought on behalf of**

**Plaintiffs and Rule 23 Class]**

255.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

256.     The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

257.     Defendants' failure to pay Plaintiffs' spread-of-hours pay was not in good faith.

## COUNT VII.

## [Violation of New York Labor Law—Failure to Provide Meal Periods Brought on behalf of Plaintiffs and the Rule 23 Class]

258.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

259.     The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p.m. and 6 a.m. NYLL § 162.

260.     Defendants failed to provide meal periods required by NYLL § 162 for every day that Plaintiffs worked.

261.     Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

262.     Defendants' failure to provide the meal periods required by NYLL § 162 was not in good faith.

## COUNT VIII.

### [Violation of New York Labor Law—Failure to Keep Records Brought on behalf of Plaintiffs and Rule 23 Class]

263.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

264.     Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYCRR § 146-2.1.

265.     As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

266.     Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

267.     Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs was not in good faith.

## COUNT IX.

## [Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice Brought on behalf of Plaintiffs and Rule 23 Class]

268.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

269.     The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL §195-1(a).

270.     Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

271.     Defendants not only did not provide notice to each employee at Time of Hire but failed to provide notice to Plaintiffs even after the fact.

272.     Due to Defendants' violations of New York Labor Law, Plaintiffs are

entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT X.

### [Violations of the Fair Labor Standards Act—Failure to make Prompt Payment on behalf of Plaintiffs and the FLSA Collective]

273.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

274.    The FLSA provides that "every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce... wages at the following rates…" U.S.C. § 206(a).

275.    The FLSA implicitly requires that wages be promptly paid when due.

276.    Defendants' failure to promptly pay Plaintiffs and the FLSA Collective their wages violated the FLSA.

277.    Defendants had, and continues to have, a policy of practice of refusing to promptly pay Plaintiffs and Collective Action Members for all hours worked, and of issuing checks to Plaintiffs and Collective Action Members that fail to clear (i.e. bounce).

278.    Due to Defendants' violations of the FLSA, Plaintiffs are entitled to recover from Defendant liquidated damages equal to 100% of their wages for each pay period in which Defendant failed to promptly pay Plaintiffs their wages pursuant to the FLSA, together with costs and attorneys' fees.

## COUNT XI.

**[Violation of New York Labor Law—Failure to Pay Workers in Accordance with the Terms of Employment Brought on behalf of Plaintiffs and Rule 23 Class]**

279.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

280.    The NYLL and supporting regulations require that "A clerical and other worker **shall** be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer". NYLL §195-1(d).

281.    Defendants had, and continues to have, a policy of practice of refusing to pay Plaintiffs and Rule 23 Class Members for all hours worked, and of issuing checks to Plaintiffs Rule 23 Class Members that fail to clear (i.e. bounce) pursuant to the terms of their employment, in violation of the NYLL.

282.    Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendant liquidated damages equal to 100% of their wages for each pay period in which Defendant failed to Plaintiffs their wages pursuant to the terms of their employment, together with costs and attorneys' fees.

## COUNT XII.

**[Violation of New York Labor Law—Failure to Provide Wage Statements**

**Brought on behalf of Plaintiffs and Rule 23 Class]**

283.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

284.     The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL § 195-1(d).

285.     Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff and did not provide the paystub on or after each Plaintiffs' payday.

286.     Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT XIII.

**[Violation of New York Labor Law—Illegal Deductions from Wages**

**Brought on behalf of Plaintiffs and Rule 23 Class]**

287.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

288.    The NYLL and supporting prohibit employers from making any deductions in an employee's wage except those expressly permitted by the Labor Law. NYLL § 193.

289.    Defendants have improperly withheld portions of Plaintiffs' wages, fraudulently stating that the deductions were made for the purposes of tax withholdings.  In reality, Defendants kept these deductions for themselves, in violation of NYLL § 193.

290.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, liquidated damages together with costs and attorneys' fees.


# COUNT XIV.

## [Violations of the Fair Labor Standards Act—Retaliation Prohibition

## Brought on behalf of Plaintiff Wandji]


291.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

292.    Defendants have willfully violated the anti-retaliation provision of the FLSA, which states that any person is prohibited from discharging or in any manner discriminating against an employee because that employee has engaged in protected conduct. 29 U.S.C. § 215(a)(3).

293.    Plaintiff Wandji is engaged in "protected conduct" by consulting an attorney to enforce his rights under the FLSA and beginning the process of filing a lawsuit against

Defendants for their violations of the FLSA and NYLL.

294.    Defendants unlawfully terminated Plaintiff Wandji as a result of Plaintiff Wandji engaging in protected conduct.

295.    Defendants have unlawfully retaliated against Plaintiff Wandji, in violation of 29 U.S.C. § 215(a)(3).

## COUNT XV.

### [Violation of New York Labor Law— Retaliation Prohibition

### Brought on behalf of Plaintiff Wandji]

296.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

297.    Defendants have also willfully violated NYLL §215, which states that no employer or agent thereof shall "[…] discharge, penalize or in any other manner discriminate against any employee because such employee… has caused to be instituted a proceeding or is about to institute a proceeding."

298.    Defendants are employers within the meaning of NYLL.

299.    Plaintiff Wandji is an "employee" as defined in NYLL § 2(5) and 215(1).

300.    Defendants discriminated against Plaintiff Wandji by wrongfully terminating his employment because Plaintiff Wandji intended to and was about to bring this action against Defendants.

301.    Defendants have unlawfully retaliated against Plaintiff Wandji, in violation of NYLL §215(1)(a)(iii).

302.     Due to Defendants' violations of New York Labor Law, Plaintiff Wandji is entitled to recover from Defendants, jointly and severally, liquidated damages, costs and reasonable attorneys' fees, and an award of lost compensation and damages pursuant to NYLL §215(2)(a)

## **TOLLING OF THE STATUTE OF LIMITATIONS**

303.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

304.     Upon information and belief, Defendants knew that Plaintiffs and members of the FLSA Class/Collective were entitled to proper minimum wages and overtime compensation, and knowingly and maliciously violated the FLSA and NYLL.

305.     Upon information and belief, Defendants concealed from Plaintiffs and members of the FLSA Class/Collective their rights to receive minimum wages and overtime compensation.

306.     Upon information and belief, Defendants failed to provide Plaintiffs and members of the FLSA Class/Collective with notice of their rights to receive minimum wages and overtime compensation.

307.     Because Defendants, upon information and belief, have concealed from Plaintiffs and members of the FLSA Class/Collective notice of their rights to receive minimum wages and overtime compensation as required by FLSA, discussed supra, the claims of Plaintiffs and the FLSA Collective for unpaid overtime compensation, statutory damages, and other relief, may extend beyond the statute of limitations for violations of the FLSA and NYLL on the grounds of equitable tolling.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, and on the behalf of the FLSA Collective and Rule 23 Class, respectfully request that this Court enter a judgment providing the following relief:

a)      An Order tolling the statute of limitations;

b)      An Order certifying a Rule 23 Class;

c)      Authorizing Plaintiffs Frebet, Sangare, Dean, Wandji, Ndoba, and Roussi at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

d)      Certification of this case as a collective action pursuant to FLSA;

e)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs Frebet, Sangare, Dean, Wandji, Ndoba, and Roussi and their counsel to represent the Collective Action Members;

f)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

g)      An injunction against Corporate Defendants, their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

h)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

i)      An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

j)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

k)      Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

l)      An award of liquidated and/or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

m)      An award of liquidated damages as a result of Defendants' failure to promptly pay

Plaintiffs' wages pursuant to the FLSA;

n)      An award of liquidated damages as a result of Defendants' failure to pay Plaintiffs' wages in accordance with the agreed terms of employment pursuant to New York Labor Law;

o)      An award of liquidated and/or punitive damages, and compensatory damages for lost wages as a result of Defendants' knowing and willful failure to comply with the anti-retaliation provisions of the FLSA and NYLL;

p)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

q)      The cost and disbursements of this action;

r)      An award of prejudgment and post-judgment fees;

s)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

t)      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: January 17, 2020          **Xue & Associates, P.C.**
      Glen Cove, New York      *Attorneys for the Plaintiffs, proposed FLSA*
                                      *Collective and potential Rule 23 Class*

                    By:    /s/ BENJAMIN B. XUE
                              Benjamin B. Xue, Esq.
                              Michael S. Romero, Esq.
                              1 School Street, Suite 303A
                              Glen Cove, NY 11542
                              Tel.: (516) 595-8887
                              benjaminxue@xuelaw.com
                              mromero@xuelaw.com