# XUE & ASSOCIATES, P.C.

1 SCHOOL STREET, SUITE 303A
GLEN COVE, NY 11542
PHONE: (516) 595-8887
FACSIMILE: (212) 219-2276

BENJAMIN B. XUE                                                          MICHAEL S. ROMERO
MEMBER OF NY & NJ BARS                                                   MEMBER OF NY BAR

April 16, 2021

**Via ECF**
Hon. John P. Cronan, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, NY 10007

> **Re:    Frebet et. al. v. L'atre Enterprises, Inc. et al.**
> **Case No.: 1-20-cv-00481**
> **Letter Re: Amended Settlement Agreement**

Dear Hon. Judge Cronan:

This office represents Plaintiffs in the above captioned action. We write to you jointly with counsel for Defendants to respectfully request the Court's approval of the parties' negotiated Amended Settlement Agreement and Release (the "Amended Settlement Agreement") herein attached as **Exhibit A**. For the reasons set forth below, the Parties respectfully request that the Amended Settlement Agreement be approved pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015) and be found to be fair and reasonable in accordance with the factors set forth in *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012).[1]

---

[1] The Parties originally sought this Court's approval of a Proposed Settlement Agreement pursuant to *Cheeks* on or about March 22, 2021 (See Dkt. No 57). The Court held a phone conference on April 5, 2021. The Court directed the Parties to submit an Amended Settlement Agreement to address the issues discussed at the conference. For

## I.  <u>Plaintiffs' Allegations and Defendants' Responses</u>

Plaintiffs Ludovic Frebet, Djibrill Sangare, Khaireddine Jarray a/k/a Kairy Dean, William Wandji, Aime Mike Icapis Ndoba a/k/a Mike Aime, and Gregory Roussi brought this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL"), claiming unpaid wages and overtime wages, "spread of hours" pay, damages for wage notice and wage statements violations, and damages for a failure to timely pay wages. Plaintiff Tiemtore subsequently joined the suit.

Each Plaintiff is a former employee at Defendants' restaurant, A.O.C. L'aile ou la Cuisse, located at 314 Bleecker Street, New York, NY 10014 (the "Restaurant"). Each Plaintiff worked as either a busboy, a waiter, or a bartender, with varying employment durations ranging from 1 year to over 6 years. Plaintiffs allege that for the entirety of their respective employment with Defendants, Defendants improperly took a tip credit against their wages, without ever giving Plaintiffs the required notice that this credit was being taken. As a result, Plaintiffs allege they were not paid the proper minimum wage for the entirety of their employment and are entitled to damages for these minimum wage underpayments. Plaintiffs also allege that for the entirety of their respective employment with Defendants, they were not properly paid an overtime premium whenever they worked over 40 hours in any given week. Additionally, Plaintiffs allege that they were almost always paid late, and that the checks issued to them by Defendants would frequently bounce, causing even further delay.

---

the Court's convenience, annexed hereto as **Exhibit E** is a copy of this Letter redlining the differences from the previous letter seeking approval of the original Settlement Agreement (See Dkt. No. 57)

Defendants deny the allegations asserted by Plaintiffs, and specifically deny any potential liability. Defendants also produced extensive pay records that they claim would corroborate their defenses.

In sum, there is a bona fide dispute between the Parties regarding the merits of Plaintiffs' wage and hour claims. The instant settlement constitutes the Parties' effort to resolve same in an amicable fashion through arm's length bargaining.

## II.    <u>Settlement Amount and Apportionment</u>

Plaintiffs and Defendants have been attempting to settle this matter since early on in this litigation. Plaintiffs initially provided Defendants with damage calculations based upon the estimated maximum potential judgment against Defendants should Plaintiffs succeed on all their claims against Defendants at trial. Early on in this litigation there was a settlement demand from Plaintiffs to Defendants in the amount of $150,000 in or around May 2020. This amount was based upon a portion of Plaintiffs' unpaid wages claim, factoring in a small discount based upon the risks associated with bringing a case to trial, as well as factoring in the fact that at the time the Restaurant was closed for an unforeseeable amount of time because of Covid-19. Defendants only offered $20,000 to settle the case.  Though the parties were not able to come to an agreement at that time, the parties were hopeful that an agreement could be reached and requested this case be referred to mediation.

The parties litigated this matter for over a year and exchanged paper discovery. Prior to conducting depositions, the parties participated in a full day mediation with 6 of the 7 Plaintiffs present (the absent Plaintiff also designated authority to settle). The mediation was successful, and

the parties were able to agree on a settlement amount of $130,000, just $20,000 less than Plaintiffs' earlier settlement demand.

Defendants have consistently claimed financial difficulties throughout the litigation because of the Restaurant's closure due to Covid-19. The settlement payments were specifically structured as installments so that Defendants would be able to pay the settlement amount to Plaintiffs.

The gross settlement amount of $130,000 is broken down as follows: 2/3 of the gross settlement amount ($86,666.67) is to be paid to the Plaintiffs, and 1/3 of the gross settlement amount ($43,333.33) is to be paid to Plaintiffs' counsel as attorneys' fees. Annexed hereto as **Exhibit B** is a chart indicating the total amount paid to each Plaintiff and the payment schedule.

The amount paid to each Plaintiff is partially based upon the pay records maintained by Defendants (which contained information pertaining to each Plaintiffs' weekly pay and weekly hours). The pay records indicate that a tip credit was taken against Plaintiffs' minimum wage. However, since Plaintiffs argue that Defendants did not give Plaintiffs notice of this tip credit, it was improper for Defendants to deduct it from Plaintiffs' wages. By subtracting the hourly wage Defendants paid Plaintiffs from the proper minimum wage, Plaintiffs' counsel calculated the hourly deficit owed to each Plaintiff. By multiplying this deficit by each Plaintiffs' weekly hours, Plaintiffs' counsel determined the minimum wage underpayments owed to each Plaintiff. This same process was used to determine the overtime underpayments owed to each Plaintiff. The minimum wage underpayments and overtime underpayments were then added together to determine the damages allegedly owed to each Plaintiff.

Next, the damages allegedly owed to each Plaintiff individually was divided by the total damages owed to all Plaintiffs combined, in order to determine the percentage of the total damages

owed to each Plaintiff. Each Plaintiffs' percentage of the total damages owed was then multiplied by Plaintiffs' portion of the settlement amount ($86,666.67), to determine the amount of the settlement that each Plaintiff would receive.

Though Plaintiffs deny that Defendants' pay records are complete and accurate, the foregoing damage calculations (which were created based upon those pay records) are a closer approximation to the damages actually owed to Plaintiffs than any damage calculations based upon Plaintiffs' original recollection when the amended complaint was filed as to what their weekly pay and hours worked were.

### III. The Amended Settlement Agreement is Fair and Reasonable

Plaintiffs seek final approval of the Amended Settlement Agreement reached in this case, pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) (holding that, "the FLSA falls within the 'applicable federal statute' exception under Rule 41" and therefore, "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect."). As set forth in further detail below, and in accordance with *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012), the Parties are in agreement that this settlement is fair, reasonable, consistent with the underlying purposes of the FLSA, and is the product of equal bargaining.

As articulated in *Wolinsky*, when assessing the fairness of a settlement, a court should consider the totality of circumstances including but not limited to several factors such as: (1) the range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the

seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement "is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinksy*, 900 F. Supp. 2d at 335 (quoting *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214, 2010 U.S. Dist. LEXIS 75098 (S.D.N.Y. July 23, 2010)). Based on an analysis of these factors, the Parties are confident that the negotiation process was conducted at arm's length and should pass this Court's scrutiny.

### A.  The Range of Possible Recovery and the Litigation Risks Faced by the Parties

The range of possible recovery in this action varies wildly based upon whose assertions are accepted as true by a finder of fact. Based on damage calculations prepared by Plaintiffs' counsel relying solely on Plaintiffs' allegations, Plaintiffs are owed $**288,001.61** in back wages exclusive of statutory penalties, liquidated damages and attorney's fees. Annexed hereto as **Exhibit C** is a chart of damages owed to Plaintiffs based upon Plaintiffs' allegations. These calculations, however, do not factor Defendants' financial circumstances as well as Defendants' defenses asserted in the litigation and the inherent risks and uncertainties of proceeding with a trial.  *See e.g. Meigel v. Flowers of the World, NYC, Inc.,* 2012 U.S. Dist. LEXIS 2359, at *2-3, 11 Civ. 465 (KBF) (S.D.N.Y. Jan. 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.")

Through the course of discovery Defendants produced extensive pay records to Plaintiffs' counsel. These pay records, totaling over 200 pages in length, tend to contradict Plaintiffs' allegations. While the pay records are by no means complete (for example, there are no records

whatsoever for certain time periods Plaintiffs' allegedly worked for Defendants, records which Defendants had an obligation to maintain pursuant to the FLSA), the records, if accepted as accurate (which Plaintiffs deny), indicate that in general Plaintiffs worked far fewer hours per week than Plaintiffs have alleged, and that generally, most of the Plaintiffs did not work any overtime hours at all. Additionally, the records, if accepted as accurate (which Plaintiffs deny), indicate that in general, Plaintiffs were paid at a higher hourly rate than Plaintiffs have alleged. Plaintiffs' counsel has prepared damage calculations, annexed hereto as **Exhibit D**, which assume *arguendo* that that the pay records provided by Defendants are complete and accurate, and according to those calculations Plaintiffs are only owed a total of **$84,275.31** in back wages exclusive of statutory penalties, less than the settlement amount in this action. While Plaintiffs would be entitled to liquidated damages in the event it can be shown Defendants' violations of the FLSA and NYLL were willful, the fact that Defendants have maintained extensive pay records could arguably be used to show that Defendants attempted to comply with the FLSA and NYLL in good faith, and that their violations, if any, were not willful.

In addition, even if Plaintiffs were successful and received a judgment in their favor, Plaintiffs face the significant risk of not being able to collect on such a judgment. Defendants are currently facing significant financial hardship because of the Covid-19 pandemic. The Restaurant has either been closed entirely or opened with limited operations since March 2020.  It has not operated at all since June 2020. At this time, it not clear when, if ever, the Restaurant will be able to recover from the loss of business it has suffered from the pandemic. Defendants simply do not have the assets to be able to satisfy a large judgment against them. The parties were able to negotiate the Amended Settlement Agreement so that any payments made would be in installments

that Defendants can afford to pay, to ensure that Plaintiffs will be able to collect on the settlement amount.

In light of the foregoing, the parties believe the settlement amount of $130,000.00 is fair and reasonable. Not only will the parties avoid the burden and risk of establishing their respective claims and defenses at trial, but Plaintiffs also avoid the significant risk of not being able to collect any substantial amount awarded. Under these circumstances, a settlement in the amount of $130,000.00 is a reasonable compromise.

In addition, settling now preserves Defendants' assets by saving them the cost of continuing to litigate this matter and proceeding to trial. Continuing to litigate this matter would further reduce Defendants' assets, increasing the likelihood that Plaintiffs would not be able to collect on a judgment in their favor. By settling now rather than litigating further, Plaintiffs avoid the risk of losing at trial or, even if prevailing at trial, avoid the inability to collect due to the financial hardship faced by Defendants. Continued litigation therefore will negatively impact the Plaintiffs' chances at any recovery. Most importantly, Plaintiffs understand the situation, are satisfied with the settlement amount, and voluntarily and willingly entered into the Amended Settlement Agreement.

### B. The Settlement Negotiations Occurred at Arm's Length

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *See, e.g.*, *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, at *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiffs and Defendants were represented by counsel experienced in wage and hour law."). Here, counsel for both parties are experienced litigators. The undersigned

practices primarily on employment law issues. The settlement was reached after a year-long litigation. Parties exchanged multiple demands and offers of settlement before settling on the terms of this proposed settlement. The terms of the Amended Settlement Agreement were reached and agreed upon during a full day mediation where **six of the seven plaintiffs in this action were present and participated**.

Moreover, prior to entering into the Amended Settlement Agreement, Plaintiffs had thoroughly considered the risks and benefits of continuing the litigation. The Amended Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

### C.  Attorney's Fees

The Amended Settlement Agreement also provides for reasonable attorneys' fees. Pursuant to our firm's agreement with the Plaintiffs dated August 2019, the Firm will retain 1/3 of the Settlement Amount as attorneys' fees. Though our firm's agreement with Plaintiffs permits us to also recover costs and expenses, we have decided to forego collecting those costs and expenses from the Settlement Amount. Based on previous experience in handling FLSA and NYLL matters, this is a standard and acceptable arrangement for attorneys' fees.

Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc*., 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp*., 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). This case is distinguishable from the case cited in Cheeks, wherein that Amended Settlement Agreement

was denied because the attorneys' fees were set at between 40 and 43.6 percent of the total payment, without justification to support the higher fees. *Cheeks v. Freeport Pancake House, Inc*., 796 F3d 199, 206 (2d Cir 2015) (citing *Lopez v Nights of Cabiria, LLC*, 96 F Supp 3d 170, 181-82 (SDNY 2015). Therefore, as one-third is standard practice in FLSA claims, it is a fair number for this matter as well.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees in excess of 40%. *Id*. at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, many courts have recognized the "percentage of the fund" method as an appropriate means by which to compensate plaintiff's attorneys in FLSA settlements. *See Velasquez v. Digital Page*, No. 11 Civ. 3892, 2016 U.S. Dist. LEXIS 84554, at *4 (E.D.N.Y. June 28, 2016) (applying one-third of percentage of fund method in approving settlement); *see also Hiang v. Chiang*, No. 16 Civ. 1129, 2016 U.S. Dist. LEXIS 142670, at *7-8 (S.D.N.Y. Oct. 14, 2016) (awarding attorneys' fees of one-third of settlement amount in FLSA case); *Chauca v. Abitino 's Pizza 49th St. Corp*., No. 15 Civ. 6278, 2016 U.S. Dist. LEXIS 86206, at *6 (S.D.N.Y. June 29, 2016) (awarding attorneys' fees in amount of one third of gross settlement); *Meza v. 317 Amsterdam Corp*., No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) (when using the "percentage of the fund" approach, "courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases"); *Rangel v. 639 Grand St. Meat & Produce Corp*., No. 13 Civ. 3234, 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one third of the FLSA settlement amount); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) ("a fee that is one-third of the fund is typical" in FLSA cases).

Therefore, the attorney's fees requested is reasonable under the circumstances. *Cf. Scott v. BK Beasts LLC*, No. 17-CV-699 (RRM) (PK), 2018 U.S. Dist. LEXIS 75928, at *5 (E.D.N.Y. May 3, 2018) (holding attorney's fees request totaling 38% of the settlement fund reasonable because the attorney's fees requested "fall below the lodestar amount"). Here, Xue & Associates, P.C. has been involved in this matter for over 20 months, and the attorney's fees, if billed hourly, would amount to $53,975, including $400 filing fee, which substantially exceeded $43,333.33.

### IV.  Other Issues Addressed at the April 5, 2021 Conference

The Parties also wish to take this opportunity to discuss the other issues addressed at the April 5, 2021 conference (the "Conference").

First, Plaintiff Frebet is no longer being awarded an additional $5,000 over his proportional share of the settlement amount based on his status as a lead Plaintiff. The amount paid to each Plaintiff has been adjusted accordingly in the manner described above. Plaintiffs' counsel has advised Plaintiff Frebet of the Court's decision. Though Mr. Frebet is disappointed, he accepts the Court's decision and has signed the Amended Settlement Agreement.

Second, as stated on the record at the Conference, the Amended Settlement Agreement purports to settle only wage and hour claims, including wage and hour claims that could have been brought in this action but were not. Plaintiffs are not releasing Defendants from any claims unrelated to wage and hour claims pending before this Court. Defendants' counsel also confirmed such understanding on the record.

Third, as stated on the record at the Conference, the language contained in subsection 5 of the Amended Settlement Agreement requiring Plaintiffs to waive "all related derivative benefit claims (both ERISA and non-ERISA benefits)" is included to prevent Plaintiffs from claiming that the portion of the settlement amount allocated to unpaid wages qualifies for any retirement or

similar benefits paid by Defendants. After explaining this to the Court, it was agreed that this provision would remain in the Amended Settlement Agreement. Under any circumstances, this language is academic because there were no such retirement or similar benefits in existence during Plaintiffs' employment.

### V. <u>Conclusion</u>

For the foregoing reasons, counsel for all Parties respectfully submit that the Amended Settlement Agreement is fair and reasonable, and therefore jointly request that the Court approve or so order the Amended Settlement Agreement and enter the Stipulation and Order of Final Dismissal with Prejudice appended thereto.

Respectfully submitted,

*/s/ Benjamin B. Xue*
Benjamin B. Xue

cc: Defense Counsel (by ECF)